UNION BANK (POTOMAC CO. v.).  See Case No. 11,318.

UNION BANK (SCHOLFIELD v.).  See Case No. 12,475.

---

## Case No. 14,352.

### UNION BANK et al. v. SMITH.

[4 Cranch, C. C. 509.] [1]

*Circuit Court, District of Columbia. March Term, 1835.*

ADMINISTRATORS — MINGLING ASSETS — WHEN CHARGEABLE WITH INTEREST.

1. The orphans' court may charge the administrator with interest in certain cases.

2. If the administrator mingled the assets with his own funds, upon which he drew indiscriminately for his own purposes, he must be presumed to have applied them to his own temporary use and profit, and is chargeable with interest thereon for the whole time the assets were thus mingled and used indiscriminately; and the orphans' court ought to have so decided.

This was an appeal from the orphans' court upon a plenary proceeding by libel and answer. The principal question in the cause, was, from what time the administrator should be chargeable with the interest upon the sum of $8,390.01½ the amount of assets in his hands as administrator of the estate of Samuel Robinson.

The case was fully argued by Mr. Dunlop and Mr. R. S. Coxe, for the appellants; and by Mr. Marbury and Mr. Jones, for the appellee.

Mr. Dunlop cited the following authorities on the subject of interest: Gwynn v. Dorsey, 4 Gill. & J. 453. 460; Perkins v. Bayntun. 1 Brown. Ch. 375; Schieffelin v. Stewart, 1 Johns. Ch. 620; Newton v. Bennet, 1 Brown, Ch. 359; Brown v. Rickets, 4 Johns. Ch. 303; Grandberry's Case, 1 Wash. [Va.] 246; Carter's Case, 5 Munf. 240; McCall v. Peachy, 3 Munf. 303.

Mr. Marbury and Mr. Jones, contra, cited Adams v. Gale, 2 Atk. 106; Child v. Gibson, Id. 603; 7 Har. & J. 42; Wilson v. Wilson, 3 Gill. & J. 20; Burch v. Gittings, in Montgomery county, Maryland; Granberry v. Granberry, 1 Wash. [Va.] 249; Fitzgerald v. Jones, 1 Munf. 150; Lewis v. Bacon, 3 Hen. & M. 89; Lightfoot v. Price, 4 Hen. & M. 431; Sheppard v. Starke, 3 Munf. 29; Cavendish v. Fleming, Id. 198; Hall's Index. Append. 631, 645,—as to modes of charging interest.

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

CRANCH, Chief Judge (THRUSTON, Circuit Judge, absent). The libel states that on the 10th of April, 1827, the respondent settled his first administration account of the estate of Samuel Robinson, leaving a balance in his hands of $8,390.01½ to be distributed among the creditors, being less than fifty per cent. of the whole amount of claims. The libellants aver that the respondent ought to be charged with interest upon that sum from the time he received it, until the distribution, because he has used and employed it, and it has produced interest. That he ought, within thirteen months after the date of his letters of administration, to have paid to the libellants their proportion of the assets; and, not having done so he is liable for the interest from that time, although he may not have used the assets, and although they may not have earned interest. They also insist that he ought to have invested the assets in productive funds, and therefore is chargeable with interest; but he has refused to charge himself with interest, or to account therefor; wherefore they pray that he may be cited to account in the orphans' court and be decreed to charge himself with interest and to pay the libellants their respective proportions of the principal and interest, &c. The answer of Mr. Smith admits the amount of assets in his hands, as charged; and states that the Bank of the United States gave him notice of their claim, and insisted that it was entitled to priority of payment; that Mr. Thompson, another of the libellants, also insisted that his claim was entitled to a preference; that these claims amounted to more than all the assets; and that these creditors gave him a written notice and request that the said assets should not be distributed until their right to priority of payment should be decided by the judgment of a court of equity in a suit then forthwith to be instituted; that the Union Bank denied the right of priority of payment claimed by those other creditors, and notified the respondent that they would contest the same; that in a suit brought by that bank against the respondent, to try the right of priority, which was contested by those other creditors, judgment was finally rendered by the supreme court of the United States at January term, 1831, (Smith v. Union Bank, 5 Pet. [30 U. S.] 518), against the right of priority; that he was always ready with the funds to pay the creditors, from the time limited by law for the distribution, until he did distribute, in the year 1832, if the creditors could have agreed among themselves as to the priority of payment. He denies that he was in any default, and that he is chargeable with interest, having been always ready to pay, and has been only hindered by the litigation of the creditors among themselves. He denies that he was under any obligation to invest the assets in productive funds, and avers that he never did so invest them, or in any property from which he derived any profit, benefit, or advantage; nor did he lend the same for prof-

it. That he placed them to his private account in the Farmers' and Mechanics' Bank of Georgetown, among his own funds, and drew on that account, as usual, when his convenience required. That he always had resources at his command, by which he could, at any time have paid the libellants, and was always ready and willing to pay them. This answer having been excepted to, Mr. Smith, in a further answer, says that the sum of $8,390.01½ was placed to his debit (credit?) in the Farmers' and Mechanics' Bank of Georgetown, on the 27th of March, 1827. That it appears by successive settlements of his accounts with that bank, that from that time to May, 1830, "a list of which is hereunto annexed as part of this answer," there were to the credit of his accounts, balances, whenever settled, of much larger amount than the assets, except for a short period in 1827 and 1828, "so that the said assets do not appear to have been used, (with the said exception,) before May, 1830," from which period, until the decision of the supreme court, he admits that the fund was used by him in his trade.

The list of balances, referred to, is not a list of balances in the respondent's account, but in the joint account of W. & C. Smith with the bank. It does not appear who W. & C. Smith were, but if it should appear that they were a mercantile firm, and that the assets were placed in the bank subject to their use and control, and mingled with their funds, I should think the respondent was chargeable with interest for the whole time the money was at their disposal, although they might have always had credit enough in bank to answer for it. It was a fund, when thus placed, which either partner had a right to draw out at any time; and it was as much liable to the creditors of W. & C. Smith, as to those of S. Robertson, and perhaps more so. If W. & C. Smith had failed, indebted to the bank, the bank would have retained it, and it would have been lost to the estate of Robertson. Although W. & C. Smith may not actually have used the money, yet it gave them credit with the bank, so that they might more readily obtain discounts. In the case of Treves v. Townshend, 1 Brown, Ch. 384, the defendant contended that he ought not to be charged with interest, because "he always kept an equal sum at his banker's, ready to answer to it." But to this Lord Loughborough answered: "The money of a merchant, at his banker's, does not lie idle; it is part of his stock in trade."

In the present case, it does not appear that W. & C. Smith were not stockholders in the bank; and if they were, they derived a benefit from the deposit which the bank had a right to use in its ordinary business of discounting bills and notes. It has been suggested that, although a court of equity could charge the respondent with interest, yet the orphans' court, which is of limited jurisdiction, cannot: for it can only charge the administrator with the actual in-

crease of the estate in his hands. But that point seems to be settled by the court of appeals in Maryland, in the case of Gwynn v. Dorsey, 4 Gill. & J. 461. That case also decides the point, that, if an administrator has applied the assets to his own use and profit, he is chargeable with interest from the time he received them; and if he kept them by him, or omitted, without reason, to distribute them, he is chargeable with interest from the time limited by law for the distribution, whether he made profit by them or not. Mr. Smith placed these assets in a situation where they may be presumed to have produced him profit, and if they did not, it was his own fault. It is true, that he was in no default for not having distributed the assets sooner than he did, but having mingled them with his own funds, upon which he drew, without discrimination, for his own purposes, or for those of the firm of W. & C. Smith, he must be presumed to have applied them to his own temporary use and profit.

The libel complains of the commission of five per cent. paid to a collector, and of ten per cent. claimed by the respondent, as commissions. These complaints, however, seemed to have been abandoned at the argument, as matters within the exclusive discretion of the orphans' court. See Wilson v. Wilson, 3 Gill. & J. 20. This cause seems to have been set for hearing on bill and answer; Mr. Smith's answer, therefore, is to be received as evidence in his favor. He there says, "When the money was payable by law, and at all times since, this respondent has been fully prepared, ready, and willing to settle the said estate, and pay over to the petitioners their shares of the said estate." "That he never did invest the said assets in any stock or other property from which he derived profit, benefit, or advantage; neither did he ever lend the same to any person for profit by the loan thereof." "That when the assets belonging to the estate of Robinson were paid to him, he placed them to his private (account?) with the bank, and among his own funds, supposing they would be called for, and paid out, at the expiration of the year as appointed by the order of the court. That when the said assets so stood to the credit of his private account, he drew on that account, as usual, when his convenience required; and even, when considerable sums were lying in his desk, and which he could as readily have used as the funds to his credit on the books of the bank." "This respondent avers that he always had resources at his command, by which he could at any time have paid the said petitioners, and that he was always ready and willing to have paid them." And by his supplemental or further answer he says, "that the said sum of $8,390, was placed to his debit" (credit) "in the Farmers' and Mechanics' Bank of Georgetown as aforesaid, on the 27th of March, 1827. That

it appears, by successive settlements of his account with the said bank between that period and the month of May, 1830, a list of which is hereunto annexed as part of this answer, that there was, to the credit of his account, balances, whenever settled, of much larger amount than the amount of the said assets, except for a short period in the years 1827 and 1828; so that the said assets do not appear to have been used, with the said exceptions, before May in the year 1830. From this period (May, 1830) until the decision of the supreme court aforesaid, the respondent admits that the said fund was used by him in his trade; but whether the same produced profit or loss, it is impossible for him to say, because he cannot tell to what purchases the said fund was applied; mingled with the mass of his accounts there was no specific application of it. This respondent, however, says that as soon as the decision of the supreme court in the case between the said parties was made known to him he was provided with funds to pay, the said several parties libellants, their respective dividends of the said assets, and they were so notified," &c.

It may be observed that the respondent does not aver that these assets were not used by him for his own purposes; he only says that he did not invest them in productive property, nor lend them for profit. Nor does he aver that they were always lying at his banker's; he only avers that it appears by successive settlements of his account with the bank, that at the times of those settlements, except in 1827 and 1828, there were balances in his favor to a larger amount than the assets; and the list of balances referred to, is not a list of balances of his private account, but of that of W. & C. Smith. It appears, then, from his own answer, that he was in possession of this fund, in money, from the 27th of March, 1827, till some time in the year 1832; that he mingled it with his own funds at his banker's, and used the same indiscriminately with his own, for his own purposes, or for those of the firm of W. & C. Smith. According to the list of balances there were several long periods during which it does not appear how the account stood; but even if there was always enough in bank to the credit of W. and C. Smith to meet the assets when called for, I think the administrator was chargeable with interest for the whole time the money was mingled with his funds, or with those of W. & C. Smith, in the bank, and used indiscriminately with their own funds for their own purposes; and that the judge of the orphans' court, having the same evidence before him, ought to have so decided. The precise time, when the administrator distributed the assets, does not appear in this record, but must appear upon his accounts settled with that court.

I think, therefore, that the decree of the orphans' court should be reversed, and the

cause remanded with instruction to that court, in settlement of the administration account, to charge the administrator for interest upon $8,390, at the rate of 6 per cent. per annum from the 27th of March, 1827, till the time or times respectively of his distributing the principal among the creditors. See also Hunter's Ex'rs v. Spotswood, 1 Wash. [Va.] 145; Lomax v. Pendleton, 3 Call, 538; Miller v. Beverleys, 4 Hen. & M. 415, 416; Beverleys v. Miller, 6 Munf. 99; White's Ex'rs v. Johnson, 2 Munf. 285; McCall v. Peachy's Adm'r, 3 Munf. 288.